# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY WILSON,<br><br>       Plaintiff,<br><br>   v.<br><br>CALIFORNIA DEPARTMENT<br>OF CORRECTIONS, et al.,<br><br>       Defendants.<br>_____/ | CASE NO. 1:05-cv-01144-LJO-SMS PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING (1) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, (2) DEFENDANT AN NGUYEN'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, (3) CLAIMS AGAINST DEFENDANTS TERHUNE, ADAMS, AND CASTILLO BE DISMISSED PURSUANT TO THE DOCTRINE OF RES JUDICATA, AND (4) DEFENDANT KIM NGUYEN'S MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Docs. 60, 63, and 68)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**Findings and Recommendations on Parties' Motions for Summary Judgment**

**I.     Procedural History**

Plaintiff Kelly Wilson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's original complaint, filed September 8, 2005, against Defendants An Nguyen, Terhune, Adams, Castillo, and Kim Nguyen for acting with deliberate indifference to Plaintiff's medical needs, in violation of the Eighth Amendment.[1] (Docs. 17, 18, 23.) In February 1996, Plaintiff was arrested and taken to Fremont Medical Center for a severe sinus infection. (Doc. 1, Comp., court record pg.

---

[1] Defendants Yuba City, Sutter County, California Department of Corrections and Rehabilitation, Pak, and Shedler have been dismissed from the action. (Docs. 23, 54.)

1   4:10-11.) A doctor cut a hole in Plaintiff's left eyelid to relieve the pressure that had built up behind
2   Plaintiff's eye and informed jail officials that Plaintiff required surgery. (Id., 4:11-14.) The claims
3   in this action arise from the failure of Defendants to provide Plaintiff with appropriate medical care
4   for his condition, both before and after his 1999 surgery.

5   Plaintiff filed a motion for summary judgment on December 6, 2007, Defendant An Nguyen
6   filed a motion for summary judgment on December 28, 2007, and Defendants Terhune, Adams,
7   Castillo, and Kim Nguyen filed a motion for summary judgment on January 31, 2008. (Docs. 60,
8   63, 68.) All three motions were opposed and the oppositions replied to.[2] (Docs. 62, 65, 66, 67, 72,
9   73.) Plaintiff also filed surreplies to Defendants' motions without leave of court, which were
10  stricken pursuant to separate order. (Docs. 71, 74.)

11  **II.     Summary Judgment Standard**

12      Summary judgment is appropriate when it is demonstrated that there exists no genuine issue
13  as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.
14  Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

18  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the
19  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made
20  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"
21  Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon
22  motion, against a party who fails to make a showing sufficient to establish the existence of an
23  element essential to that party's case, and on which that party will bear the burden of proof at trial.
24  Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's
25  case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment
26  ///

---

[2] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on October 11, 2006. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

2

should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

**III.     Plaintiff's Motion for Summary Judgment**

Summary judgment may be granted only if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). This requires Plaintiff to establish beyond controversy every essential element of his Eighth Amendment claims. Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).

In this instance, Plaintiff's motion is only a bare, unsupported request that summary judgment be granted in his favor and a trial date be set. The motion does not set forth any facts or arguments, and is not accompanied by any evidence. Accordingly, Plaintiff has not met his burden as the moving party and his motion must be denied.

///

IV. **Defendant An Nguyen's Motion for Summary Judgment**

   A. **Undisputed Facts**[3]

1. Defendant An M. Nguyen, M.D. was employed as a licensed medical doctor at the California State Prison-Calipatria (CSP-Calipatria) from July 1996 until August 2007.
2. Defendant An Nguyen treated Plaintiff at the prison clinic for a headache and an infected left upper eyelid on August 14, 1997.
3. After examining Plaintiff on August 14, 1997, Defendant An Nguyen's impression was that the pus discharge from Plaintiff's left upper eyelid was secondary to a wound from the Vietnam War.
4. On August 14, 1997, Defendant An Nguyen prescribed Plaintiff Motrin, 600 milligrams by mouth two times a day, for Plaintiff's headache, and the antibiotic Keflex for the upper eyelid infection.
5. On that date, Plaintiff told Defendant An Nguyen that he was taking the antibiotic Diclox, as previously prescribed by Dr. Pax.
6. Defendant An Nguyen discontinued the order for Keflex on that date after Plaintiff informed Defendant that he was still taking the antibiotic Diclox.
7. On August 14, 1997, Defendant An Nguyen told Plaintiff to return to the clinic to see Defendant if his eyelid infection had not cleared up by the time Plaintiff ran out of antibiotics.
8. On September 8, 1997, Plaintiff returned to see Defendant An Nguyen complaining of the same symptoms as on August 14, 1997.
9. On September 8, 1997, Plaintiff told Defendant An Nguyen that he had already had a CT scan of his sinus cavity performed, the result of which was consistent with a sinus infection.

///

---

[3] Plaintiff neither admitted or denied the facts set forth by Defendant Nguyen as undisputed nor filed a separate statement of disputed facts, Local Rule 56-260(b), and neither Plaintiff's complaint nor his opposition is verified, Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits).  Therefore, the Undisputed Facts are taken from Defendant's motion.

10. On September 8, 1997, Plaintiff told Defendant An Nguyen that he had been previously seen by seen by an ear, nose and throat ("ENT") doctor in Vacaville.

11. On September 8, 1997, Plaintiff told Defendant An Nguyen that the Vacaville ENT doctor told Plaintiff that Plaintiff needed surgery.

12. On September 8, 1997, Defendant An Nguyen wrote an order for Plaintiff to be referred to an ENT doctor for a consultation.

13. On September 8, 1997, Defendant An Nguyen prescribed Plaintiff Keflex, an antibiotic, to treat Plaintiff's infected upper left eyelid and Motrin for Plaintiff's pain.

14. Defendant An Nguyen ordered a culture of the drainage from Plaintiff's left eyelid on September 8, 1997.

15. On September 12, 1997, Defendant An Nguyen reviewed the laboratory results of the culture of the drainage from Plaintiff's left eyelid.

16. The culture of the drainage from Plaintiff's left eyelid came back negative for coagulase and hemophilus influenzae and showed light growth of staphylococcus.

17. Keflex, which Defendant prescribed Plaintiff on September 8, 1997, was the appropriate antibiotic for the treatment for staphylococcus.

18. On October 6, 1997, Defendant An Nguyen treated Plaintiff for drainage from his left eyelid.

19. When Defendant treated Plaintiff on October 6, 1997, he did not prescribe Plaintiff another course of antibiotics because Defendant had just prescribed antibiotics and ordered that Plaintiff be referred to a specialist on September 8, 1997.

20. On October 6, 1997, Defendant An Nguyen prescribed Plaintiff Benadryl and Motrin to treat Plaintiff's symptoms.

21. Defendant An Nguyen treated Plaintiff again for drainage from his left eyelid on November 12, 2007.

22. On November 12, 1997, Defendant An Nguyen prescribed an antibiotic, Keflex, and Motrin to treat Plaintiff's infected eyelid.

23. On November 12, 1997, Defendant An Nguyen made a second request for a referral to an ENT doctor for evaluation of Plaintiff's chronic eyelid infection.

5

24. Defendant An Nguyen's first request for a ENT referral, made on September 8, 1997 in the Physician's Orders in Plaintiff's chart, did not result in an appointment having been made by the medical staff person in charge of making the referral.

25. Defendant An Nguyen made a note on the November 12, 1997 referral to an ENT doctor that it was Priority I, which would result in Plaintiff receiving an appointment within one week of the referral.

26. The only times that Defendant An Nguyen saw and treated Plaintiff were on August 14, 1997, September 8, 1997, October 6, 1997 and November 12, 1997.

27. Defendant An Nguyen stopped treating Plaintiff because he was transferred from CSP-Calipatria to CSP-Sacramento in December 1997.

**B.  Discussion**

Defendant An Nguyen was a medical doctor at California State Prison-Calipatria. (Undisputed Fact 1.)  Plaintiff alleges in his complaint that Defendant An Nguyen caused him to suffer great pain and humiliation by making him beg for pain pills and surgery, acted like he could not understand English, only provided Plaintiff with some of the medications ordered by the ENT specialist, and only provided Plaintiff with medication after Plaintiff argued with him.  (Doc. 1, Comp., pgs. 9:18-10:17.)

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)).  The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be

6

1  manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or
2  it may be shown by the way in which prison physicians provide medical care." Id. (citing McGuckin
3  at 1060 (internal quotations omitted)).  Where a prisoner is alleging a delay in receiving medical
4  treatment, the delay must have led to further harm in order for the prisoner to make a claim of
5  deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd.
6  of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

7  Defendant An Nguyen argues that he is entitled to summary adjudication on the claim against
8  him because there is no evidence he ignored or failed to respond to Plaintiff's medical needs.
9  Defendant denies acting with deliberate indifference toward Plaintiff.

10 Defendant An Nguyen saw and treated Plaintiff four times, on August 14, 1997, September
11 8, 1997, October 6, 1997, and November 12, 1997.  (Undisputed Fact 26.)  Plaintiff thereafter
12 transferred to CSP-Sacramento, in December 1997.  (U.F. 27.)

13 Defendant treated Plaintiff at the prison clinic for a headache and an infected left upper eyelid
14 on August 14, 1997.  (U.F. 2.)  After examining Plaintiff, Defendant's impression was that the pus
15 discharge from Plaintiff's left upper eyelid was secondary to a wound from the Vietnam War.  (U.F.
16 3.)  Defendant prescribed Plaintiff Motrin for the headache, and Keflex, an antibiotic, for the upper
17 eyelid infection.  (U.F. 4.)

18 Plaintiff told Defendant that he was taking the antibiotic Diclox, as previously prescribed by
19 Dr. Pax, and Defendant therefore discontinued the order for Keflex.  (U.F. 5, 6.)  Defendant told
20 Plaintiff to return to the clinic to see him if his eyelid infection had not cleared up by the time
21 Plaintiff ran out of antibiotics.  (U.F. 7.)

22 On September 8, 1997, Plaintiff returned to see Defendant complaining of the same
23 symptoms as on August 14, 1997.  (U.F. 8.)  Plaintiff told Defendant that he had already had a CT
24 scan of his sinus cavity performed, the result of which was consistent with a sinus infection.  (U.F.
25 9.)  Plaintiff said that he had been previously seen by seen by an ENT doctor in Vacaville, who told
26 Plaintiff that he needed surgery.  (U.F. 10. 11.)  Defendant wrote an order for Plaintiff to be referred
27 to an ENT doctor for a consultation, and prescribed Keflex to treat Plaintiff's infected upper left
28 ///

eyelid and Motrin for Plaintiff's pain. (U.F. 12, 13.) Defendant also ordered a culture of the drainage from Plaintiff's left eyelid. (U.F. 14.)

On September 12, 1997, Defendant reviewed the laboratory results of the culture of the drainage from Plaintiff's left eyelid, which came back negative for coagulase and hemophilus influenzae and showed light growth of staphylococcus. (U.F. 15, 16.) Keflex, which Defendant prescribed for Plaintiff on September 8, 1997, was the appropriate antibiotic for the treatment for staphylococcus. (U.F. 17.)

On October 6, 1997, Defendant treated Plaintiff for drainage from his left eyelid, but did not prescribe Plaintiff another course of antibiotics because he had just prescribed antibiotics and he had ordered that Plaintiff be referred to a specialist. (U.F. 18, 19.) Defendant prescribed Plaintiff Benadryl and Motrin to treat Plaintiff's symptoms. (U.F. 20.)

Defendant again treated Plaintiff for drainage from his left eyelid on November 12, 2007. (U.F. 21.) Defendant prescribed Keflex and Motrin for Plaintiff's infected eyelid, and made a second request for a referral to an ENT doctor for evaluation of Plaintiff's chronic eyelid infection. (U.F. 22, 23.) The first request made by Defendant on September 8, 1997, did not result in an appointment having been made by responsible staff member. (U.F. 24.) Defendant made a note on the November 12, 1997 referral to an ENT doctor that it was Priority I, which would result in Plaintiff receiving an appointment within one week of the referral. (U.F. 25.) Plaintiff thereafter transferred to CSP-Sacramento in December 1997. (U.F. 27.)

The Court finds that Defendant has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475

///

U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim," Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference, Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). To prevail, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

In his unverified, unsupported opposition, Plaintiff argues that Defendant only did as much as he had to do, and that he did not get any medical treatment between July and August. (Doc. 67, Opp., 2:3-17.) Plaintiff argues that he had to leak staph infection all over the counter before he got any treatment, and that he had to beg for medical care and treatment. (Id.)

At this stage in the proceedings, Plaintiff may not rely on the general allegations in his complaint or on general assertions of wrongdoing by Defendant or other medical providers. Plaintiff must come forth with specific evidence that Defendant "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer, 511 U.S. at 837. Plaintiff has not submitted any evidence that Defendant's course of treatment "was medically unacceptable under the circumstances," and chosen "in conscious disregard of an excessive risk to Plaintiff's health." Jackson, 90 F.3d at 332 (internal citations omitted). Defendant is therefore entitled to judgment as a matter of law on the

claim against him. Because the Court finds Defendant is entitled to judgment on the merits, the Court does not reach Defendant's argument that the claim against him is barred by the statute of limitations.

## V. Defendants Terhune, Adams, Castillo, and Kim Nguyen's Motion for Summary Judgment

### A. Claims Against Defendants Terhune, Adams, and Castillo Barred by Doctrine of Res Judicata

All five defendants in this action move for summary judgment on the merits and on statute of limitations grounds. The present action was filed on September 8, 2005, and in both of his oppositions, Plaintiff represents that he filed this action following the dismissal of case number 1:00-cv-06977-AWI-LJO PC Wilson v. Terhune, et al. (Docs. 1, 67, 72.) Plaintiff argues that because 00-cv-06977 was timely filed on November 16, 2000, the statute of limitations does not bar this suit. (Doc. 67, 3:4-9; Doc. 72, 2:1-8.) Plaintiff asserts that he has kept this action alive through re-filing it. (Id.) Plaintiff's complaint also contains those allegations. (Doc. 1, 1:23-27.)

The doctrine of *res judicata* bars the re-litigation of claims previously decided on their merits. Headwaters, Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1051 (9th Cir. 2005). "The elements necessary to establish *res judicata* are: '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'" Headwaters, Inc., 399 F.3d at 1052 (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.2d 1064, 1077 (9th Cir. 2003)). "[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised," Arizona v. California, 530 U.S. 392, 416, 120 S.Ct. 2304, 2318 (2000), provided that the parties have an opportunity to be heard prior to dismissal, Headwaters, Inc., 399 F.3d at 1055.

In considering Plaintiff's argument that the timely filing of 00-cv-06977 tolled the statute of limitations, the Court has reviewed the record in 00-cv-06977 and takes judicial notice of its records. While the action was dismissed for failure to exhaust on September 22, 2004, the only remaining defendants at that stage in the litigation were Mock and Nguyen.[4] The claims against Defendants

---

[4] Court documents 87 and 94, case number 00-cv-06977.

Terhune, Adams, and Castillo had been dismissed, with prejudice, for failure to state a claim upon which relief may be granted on December 15, 2003.[5] The dismissal of those claims with prejudice precluded Plaintiff from reasserting them in this action, and the Court shall recommend the claims against Defendants Terhune, Adams, and Castillo be dismissed from this action on the ground that they are barred by the doctrine of *res judicata*.[6]

As set forth at the conclusion of this Findings and Recommendations, the parties have the opportunity to file written objections. **The parties may be heard on this issue, which was raised *sua sponte* by the Court, via their written objections, if any. Headwaters, Inc., 399 F.3d at 1055.**

    **B.**    **Eighth Amendment Medical Care Claim Against Defendant Kim Nguyen**

        **1.**    **Undisputed Material Facts**[7]

1. Dr. Kim Nguyen obtained his medical degree in 1978 from the University of Saigon, School of Medicine in Vietnam. He has been licensed to practice medicine in the State of California since 1995. Defendant Nguyen received his board certification in Internal Medicine in 1996 from the American Board of Internal Medicine, and became re-certified in 2006.

2. Defendant Nguyen began his employment with the California Department of Corrections and Rehabilitation ("CDCR") at the Substance Abuse Treatment Facility - Corcoran ("SATF") in 1997. At all relevant times, he was employed as a staff physician and surgeon at SATF.

3. As a staff physician at SATF, Defendant Nguyen's duties were to evaluate the health care concerns of inmate patients as a primary care physician, and to provide or request appropriate medical treatment to them while applying CDCR approved criteria for the provision of health care. He also directed other institutional medical staff, such as nurses and licensed vocational nurses, in the provision of medical care to inmate patients.

---

[5] Court documents 71 and 79, case number 00-cv-06977.

[6] The parties are the same, the claims arise from the same set of facts as conceded by Plaintiff in this action and as supported by the record in both actions, and the claims were dismissed with prejudice on their merits.

[7] Plaintiff's opposition to Defendant Kim Nguyen's motion is verified, and will be treated as an opposing affidavit to the extent it contains admissible evidence. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

4.  Defendant Nguyen's review of Plaintiff's medical records indicates that his past medical history includes: a left eye injury suffered during the Vietnam War, chronic and allergic sinusitis for twenty years, chronic headache, swelling of the left upper eyelid and discharge, sleep apnea secondary to obesity, asthma, inguinal hernia, sinus surgery in 1996, and a draining sinus condition for two years prior to December 1997.  Plaintiff also underwent surgery for chronic sinusitis on or about September 16, 1999, at San Joaquin Community Hospital ("SJCH").  This surgery included an ethmoidectomy (removal of parts of the bone lining the sinus).  Plaintiff also underwent an uvula repair at this time, which is an operation to open the upper airway to relieve obstructive sleep apnea secondary to his obesity, but which was unrelated to his sinus condition.

5.  The medical record indicates that Defendant saw Plaintiff on three occasions, September 21, 1999, June 22, 2000, and December 26, 2000.  The medical record also indicates that in addition to the various medications Defendant Nguyen ordered for him on each of the above three dates, a total of twenty-three other physician's orders were issued by Defendant Nguyen for Plaintiff between January 11 and December 5, 2000.  During this time period, Defendant Nguyen prescribed a variety of medications for Plaintiff, including Motrin, Sudafed, Migrapap (a migraine medication), Benadryl, Maalox, and Beclomethasone nasal inhaler.  On those occasions where Defendant Nguyen issued a physician's order but did not examine Plaintiff in person, those orders were prepared by nursing staff based on Plaintiff's current condition.  The prescribed medications were typically for symptomatic relief of a known chronic, but stable condition, and, when necessary, Plaintiff was also referred to the doctor's clinic depending on the nurse's evaluation. This was established procedure in CDCR institutions.

6.  Defendant Nguyen first saw Plaintiff on September 21, 1999, for a follow-up visit after his left frontal sinus surgery at SJCH the previous week.  Plaintiff stated that he had an appointment to go back to SJCH for a follow-up visit in a few days.  There were no records of the surgery available in his chart, but on that day (September 21, 1999), Plaintiff appeared to be in no acute distress.  His wound was clean and he requested a chrono for dark

sunglasses. Defendant Nguyen referred him to optometry for evaluation of his request for sunglasses. Plaintiff complained of blurred vision in the left eye and eye pain when he looked at bright light. Defendant Nguyen's assessment was that myopia had to be ruled out.

7. Defendant Nguyen next saw Plaintiff on June 22, 2000, when he presented status post-surgery in September 1999 for chronic sinusitis. He had complaints of pain in the periorbital area since the surgery and felt that a combination of Motrin and Migrapap relieved the pain, so wanted to continue with those medications. Plaintiff also complained of a stuffy nose and wanted to continue Beclomethasone nasal spray. Defendant Nguyen examined him and found him to have photo phobia (sensitivity to light). Defendant Nguyen decided to reorder his above medications, as well as Maalox, and referred Plaintiff for follow-up appointments with both ENT (ear, nose and throat) and ophthalmology specialists. Defendant Nguyen also issued Plaintiff a six-month chrono indicating that he could wear dark sunglasses.

8. Defendant Nguyen's review of Plaintiff's medical record indicates that ENT specialist Dr. Simmons evaluated Plaintiff on July 13, 2000, and concluded that Plaintiff had allergic rhinosinusitis, which is a common condition affecting many healthy people. Its symptoms can be relieved with a nasal decongestant such as Sudafed, and an antihistamine such as Dimetapp. Dr. Simmons advised Plaintiff to use a saline nasal spray as well, and Benadryl was ordered for him. The ENT specialist did not recommend any further surgery for his sinus problem.

9. Defendant Nguyen again saw Plaintiff on December 26, 2000, when he presented complaining of a headache and stating that he needs to take Migrapap or other migraine medication along with Motrin. Defendant Nguyen's examination found Plaintiff's head, ears, eyes, nose and throat to be clear, his heartbeat regular, his chest clear, and his abdomen to be soft and non-tender. Defendant Nguyen's assessment of Plaintiff was that he was suffering from migraine headache. Defendant Nguyen checked with the pharmacy and was told that he was currently on an Ergot compound (ergotamine is a particular class of drugs used to treat migraines). Per Plaintiff's request, Defendant Nguyen added Motrin to this

///

current prescription, as well as Sudafed, and issued a chrono stating that he was not cleared to work in the kitchen due to his sinus allergies.

10. Defendant Nguyen's review of the medical records indicates that during the relevant time period, Plaintiff was seen by Defendant Nguyen and several other physicians at SATF, who provided primary care and ordered medications for him according to the community standard of care. In Plaintiff's case, his main medical problem was chronic sinusitis. Defendant Nguyen and other SATF physicians prescribed various medications for symptomatic relief. Surgical treatments were outside the scope of primary care. Plaintiff was referred to outside specialists such as ENTs, ophthalmologists, and optometrists for evaluation and treatment when medically necessary and when such specialty care was not available within the institution. In Defendant Nguyen's professional medical opinion, appropriate treatment was given and appropriate medications were ordered for Plaintiff while he was at SATF.

11. Defendant Nguyen's review of the medical records and as noted above indicates that Plaitniff was examined and treated by SATF doctors and outside specialists at least six times for his complaints relating to his sinus condition between March 1999 and October 1999. During that time period, Plaintiff's medical condition and various health issues were being carefully monitored and treated by several physicians, both inside and outside the institution.

12. Plaintiff's complaint alleges that Defendant Nguyen refused to give him all the medicine that specialist Dr. Rabinov ordered for him. Defendant Nguyen's review of the medical record indicates that when Plaintiff returned from surgery at SJCH, Dr. Deering at SATF ordered his post-op medications on September 16, 1999. Thus, by the time Defendant Nguyen saw Plaintiff for the first time on September 21, 1999, his post-op medications had already been ordered by another physician at SATF.

### 2. **Discussion**

Defendant Kim Nguyen was a medical doctor at the California Substance Abuse Treatment Facility. (Undisputed Fact 2.) In his complaint, Plaintiff alleges that after he had surgery and returned to SATF, Defendant Kim Nguyen refused to provide him with all of the medication that Dr. Rabinov had ordered. (Doc. 1. Comp., court record pg. 18:25-27.) Further, Defendant Kim Nguyen

1  allegedly acted as if he could not understand Plaintiff or the English language, and failed to do
2  anything for Plaintiff until after Plaintiff used gauze pads to trap the leakage from his infected left
3  eye. (Id., pg. 19:2-9.)

4  Defendant Kim Nguyen argues that he is entitled to summary adjudication on the claim
5  against him because he at no time denied or intended to deny medically necessary treatment for
6  Plaintiff and the treatment he provided was within the community standard of care. Defendant
7  denies acting with deliberate indifference to Plaintiff's medical needs.

8  Defendant Kim Nguyen saw Plaintiff on three occasions: September 21, 1999, June 22,
9  2000, and December 26, 2000. (Undisputed Fact 5.) On or around September 16, 1999, just prior
10 to the first time Defendant saw Plaintiff, Plaintiff underwent surgery for chronic sinusitis. (U.F. 4.)
11 An ethmoidectomy (removal of parts of the bone lining the sinus) was performed, along with an
12 uvula repair, which is an operation to open the upper airway to relieve obstructive sleep apnea
13 secondary to his obesity. (Id.) The uvula repair was unrelated to Plaintiff's sinus condition. (Id.)

14 On September 21, 1999, Defendant Nguyen saw Plaintiff for a follow-up visit after his
15 surgery the previous week. (U.F. 6.) Plaintiff stated that he had an appointment to go back to SJCH
16 for a follow-up visit in a few days, and while there were no records of the surgery available in
17 Plaintiff's chart, Plaintiff appeared to be in no acute distress and his wound was clean. (Id.) Plaintiff
18 requested a chrono for dark sunglasses, and Defendant referred him to optometry for evaluation of
19 that request. (Id.) Plaintiff complained of blurred vision in the left eye and eye pain when he looked
20 at bright light. (Id.) Defendant's assessment was that myopia had to be ruled out. (Id.)

21 When Plaintiff returned from surgery at SJCH, Dr. Deering at SATF ordered his post-op
22 medications on September 16, 1999. (U.F. 12.) Thus, by the time Defendant saw Plaintiff for the
23 first time on September 21, 1999, his post-op medications had already been ordered by another
24 physician at SATF. (Id.)

25 Defendant next saw Plaintiff on June 22, 2000, for post-surgery status. (U.F. 7.) Plaintiff
26 had complaints of pain in the periorbital area since the surgery but felt that a combination of Motrin
27 and Migrapap relieved the pain, so wanted to continue with those medications. (Id.) Plaintiff also
28 complained of a stuffy nose and wanted to continue Beclomethasone nasal spray. (Id.) Defendant

examined him and found him to have photo phobia. (Id.) Defendant decided to reorder his above medications, as well as Maalox, and referred Plaintiff for follow-up appointments with both ENT and ophthalmology specialists. (Id.) Defendant also issued Plaintiff a six-month chrono indicating that he could wear dark sunglasses. (Id.)

ENT specialist Dr. Simmons evaluated Plaintiff on July 13, 2000, and concluded that Plaintiff had allergic rhinosinusitis, which is a common condition affecting many healthy people. (U.F. 8.) Symptoms can be relieved with a nasal decongestant such as Sudafed, and an antihistamine such as Dimetapp. (Id.) Dr. Simmons advised Plaintiff to use a saline nasal spray as well, and Benadryl was ordered for him. (Id.) The ENT specialist did not recommend any further surgery for his sinus problem. (Id.)

Finally, Defendant saw Plaintiff on December 26, 2000, when Plaintiff presented complaining of a headache and stating that he needed to take Migrapap or other migraine medication along with Motrin. (U.F. 9.) Defendant examined Plaintiff and found his head, ears, eyes, nose and throat to be clear, his heartbeat regular, his chest clear, and his abdomen to be soft and non-tender. (Id.) Defendant's assessment was that Plaintiff was suffering from a migraine headache. (Id.) Defendant checked with the pharmacy and was told that Plaintiff was currently on an Ergot compound (ergotamine is a particular class of drugs used to treat migraines). (Id.) Per Plaintiff's request, Defendant added Motrin to this current prescription, as well as Sudafed, and issued a chrono stating that Plaintiff was not cleared to work in the kitchen due to his sinus allergies. (Id.)

In addition to the various medications Defendant ordered for Plaintiff on those three dates, a total of twenty-three other physician's orders were issued for Plaintiff by Defendant between January 11 and December 5, 2000. (U.F. 5.) During this time period, Defendant prescribed a variety of medications for Plaintiff, including Motrin, Sudafed, Migrapap (a migraine medication), Benadryl, Maalox, and Beclomethasone nasal inhaler. (Id.) On those occasions where Defendant issued a physician's order but did not examine Plaintiff in person, those orders were prepared by nursing staff based on his current condition. (Id.) The prescribed medications were typically for symptomatic relief of a known chronic, but stable condition, and, when necessary, Plaintiff was also referred to

///

the doctor's clinic depending on the nurse's evaluation.  (Id.)  This was established procedure in CDCR institutions.  (Id.)

In his opposition, Plaintiff argues that although Defendant did prescribe lots of medications for him, he ordered the sunglasses and "no food handling" chronos only after the surgery was performed.  (Doc. 72, pg. 5:8-10.)  Plaintiff argues that pain medications are not appropriate treatment for a staph infection and there is no justification for allowing three years to pass before providing Plaintiff with surgery.  (Id., 5:14-19.)

Plaintiff's conclusory arguments are not sufficient to raise a triable issue of fact on his claim that Defendant acted with deliberate indifference to his serious medical needs.  In order to defeat Defendant's motion, Plaintiff must submit admissible evidence that Defendant "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . ," Farmer, 511 U.S. at 837, and that Defendant's course of treatment "was medically unacceptable under the circumstances," Jackson, 90 F.3d at 332 (internal citations omitted).  Plaintiff has not done so, and Defendant is entitled to judgment on the claim against him.  Because the Court finds that Defendant is entitled to judgment on the merits, the Court does not reach Defendant's argument that the claim against him is barred by the statute of limitations.

## VI. Conclusion and Recommendation

For the reasons set forth herein, the Court finds that Plaintiff has not met his burden as the party moving for summary judgment and his bare request for judgment must be denied.  Further, following a review of the proceedings in case number 00-cv-6977, the Court finds that Plaintiff's claims against Defendants Terhune, Adams, and Castillo are barred by the doctrine of *res judicata*.  Finally, the Court finds that Plaintiff has not submitted any admissible evidence raising a triable issue of fact as to his claims that Defendants An Nguyen and Kim Nguyen acted with deliberate indifference to his serious medical needs.  Accordingly, the Court HEREBY RECOMMENDS that:

1. Plaintiff's motion for summary judgment, filed December 6, 2007, be DENIED;
2. Defendant An Nguyen's motion for summary adjudication on the Eighth Amendment claim against him, filed December 28, 2007, be GRANTED;

///

3.  Plaintiff's claims against Defendants Terhune, Adams, and Castillo be DISMISSED from this action on the ground that the claims against them are barred by the doctrine of *res judicata*; and

4.  Defendant Kim Nguyen's motion for summary adjudication on the Eighth Amendment claim against him, filed January 31, 2008, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 13, 2008**                           /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE